```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CSC HOLDINGS, INC.,

                    Plaintiff,
                                                              REPORT AND
          -against-                                           RECOMMENDATION
                                                              CV 04-5690 (DRH)(ARL)
NEIL CELLA,

                    Defendant.
-------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

      This matter was referred to the undersigned by District Judge Hurley for determination of the amount of damages to be awarded pursuant to the default of the defendant Neil Cella ("Cella"). Pursuant to the order of the undersigned, plaintiff CSC Holdings, Inc. ("Cablevision") has submitted a memorandum of law in support of its damages claim, the Affidavit of Donald Kempton ("Kempton"), an investigator for CSC, and the Affirmation of Melinda M. Dus, Esq. in support of its application for attorney's fees. Having considered the plaintiff's submissions, the undersigned recommends that the plaintiff be awarded $1,886.00 in statutory damages, and $1,409.75 in costs and attorney's fees, for a total award of $3,295.75.

## DISCUSSION

<u>Cella's Default:</u>

      Cella failed to answer or otherwise move with respect to the complaint, and a default judgment was entered on September 10, 2005. Once a default is entered, a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability. Claims for damages, however, must generally be established in an evidentiary proceeding at which the defendant is afforded an opportunity to contest the amount claimed or upon a review

of detailed affidavits and documentary evidence. See Fed. R. Civ. P. 55(b); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). As noted above, plaintiff was directed to submit papers in support of its damages claim in lieu of a hearing and did so.

The Claims Against Cella:

The complaint in this action seeks damages for the illegal interception of cable television programming signals under 47 U.S.C. §§553(a)(1) and 605(a) of the Cable Communications Policy Act. Those sections prohibit the unauthorized reception of cable television programming services. See *International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 133 (2d Cir. 1996). Section 553, which applies to "unauthorized reception of cable services, provides that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) applies to "radio transmission" and "communication by radio," and provides that "[n]o person not being authorized by sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." Cella violated both of these sections.

Cablevision Programming and Billing:

Cablevision offers cable television services to subscribers who request and pay for them. Kempton Aff. at ¶ 2. The programming consists of different tiers of cable television programming services, such as "Basic" and "Family,"as well as "premium" programming that the subscriber can receive at a higher monthly cost. *Id*. at ¶¶ 3-4. The price of subscribing to packages of premium services ranges in cost up to $80.00 per month. *Id.* at ¶ 4. Cablevision

subscribers may also elect to subscribe to one or more additional "premium" services such as "Pay Per View" programming, which enables a subscriber to purchase individual movies, sporting events or concerts for a per-event fee. *Id.* at ¶ 5. The fee for additional premium services ranges from $3.95 to $54.95 per month. *Id.*

Legitimate Cablevision subscribers receive their programming through a converter-decoder that allows reception of whatever level of programming the subscriber has opted to purchase. *Id.* at ¶ 8. To prevent subscribers from receiving programming services for which they have not paid, Cablevision encrypts or "scrambles" the signals for its services, so that when in a scrambled mode, programming services not purchased remain distorted and not viewable on the subscriber's television set. *Id.* at ¶ 9. Unauthorized interception of Cablevision's programming can be accomplished by using a "pirate" or modified converter-decoder. *Id*. at ¶ 14.

Cablevision claims against the defendant arose following an investigation of a business known as Explorer Electronics, located in Dyer and Schererville, Indiana. *Id.* at ¶16. Cablevision suspected that Explorer Electronics was engaged in the sale and distribution of "pirate" converter decoder devices. *Id.* Cablevision obtained copies of Explorer Electronics's business records in the course of a lawsuit brought against them, and the records revealed that defendant Cella had purchased a descrambling devices from Explorer Electronics in January of 2003. *Id.* at ¶19; Plaintiff's Exhibit "C".

The type of device purchased by Cella has been tested and found capable of defeating the encryption technology used by Cablevision in Suffolk County, where Cella lived, thus permitting access to all of Cablevision's cable television programming, including its premium and pay per view programming services, without authorization, in violation of 47 U.S.C. §§553(a)(1) and

605(a). *Id.* at ¶ 21-23. Indeed, the sole function of such unauthorized converter-decoders is to enable their users to received unauthorized cable television programming without paying for it; they serve no lawful purpose. *See Cablevision Systems New York City Corp. v. Flores,* 2001 U.S. Dist. LEXIS 9351, at *7 (S.D.N.Y. July 6, 2001)(citing *Time Warner Cable of New York City v. Barbosa,* 2001 WL 118608 *3 (S.D.N.Y. Jan. 2, 2001)). Thus, the facts support a finding that Cella violated both sections 553 and 605 of the Communications Act, and the plaintiff is entitled to damages.

Damages:

Where a defendant has violated both sections 553 and 605, a plaintiff may recover damages under one statute or the other, but not both. *See Sykes,* 75 F.3d at 129. The plaintiff opted to receive statutory, rather than actual, damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows an award of statutory damages for the sale of unauthorized converter-decoders of "a sum not less than $1,000 or more than $10,000, as the court considers just" for each violation. In addition, the statute requires the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." §605(e)(3)(B)(iii). Here, the plaintiff seeks an award of $1,866.00 and $1,541.50 as reasonable costs and attorneys' fees.

Among the relevant criteria in setting a figure for statutory damages are "the amount of money saved by the violator and the revenues lost by the plaintiff." *Time Warner Cable of New York City v. Dockins,* 1998 U.S. Dist. LEXIS 22689, at *18 (S.D.N.Y. Sept. 4, 1998). Because the defendant has defaulted, it is impossible to determine the actual amounts saved by Cella or lost by the plaintiff, and an estimate must be made. In this regard, the length of time that the descrambler was in use is significant. Courts have awarded damages from the date of the

defendant's use of the decoder until the default. *See, e.g., Time Warner Cable of New York City v. Peluso,* CV-00-1539, Report and Recommendation (NG) ( E.D.N.Y. Feb. 13, 2001) (RML), *adopted* (E.D.N.Y. Mar. 5, 2001) (NG). Here, Cablevision alleges that Cella received the illegal device in January 2003, and the Complaint was filed in December 2004. Damages will be based on a period of 23 months. Cablevision also alleges that Cella was a Cablevision subscriber during the relevant time period, subscribing to a service that cost approximately $48.00 a month. *See* Kempton Aff, at ¶ 20. The cost for premium service during the relevant period was approximately $80.00 per month. *Id.* at ¶ 26. Thus, the approximate damages to Cablevision for the relevant period is the difference between what Cella paid - $48 per month - and what the level of services that the illegal device gave him access to would have cost -$80 per month-, that is, $32 per month, for a period of 23 months, for a total of $736.00 in estimated damages for the unauthorized access to premium programming.

Cablevision is also entitled to damages based on the defendant's unauthorized access to pay per view programming. This court recommends that $50 per month be considered in estimating the damages associated with the defendant's access to pay per view events for 23 months, for a total of $1150.00 *See Peluso* at 8(awarding $100 per month); *see also Cablevision Systems of New York City Corp. v. Ayala,* 2000 U.S. Dist LEXIS 9612, at *12-13 (S.D.N.Y. July 10, 2000) (finding $10,375 to be a reasonable amount for the pay-per-view selections defendant "might have viewed without making the requisite payment to Cablevision" for a period of 83 months, or approximately $125 per month).

Based on these estimates, the court recommends an award of $1,886.00 for the defendant's use of one device. This award is reasonable, based on the value of the services that

the defendant had access to without paying for them. Had the defendant appeared and contested the damages, it is possible that the damages award would have been less. The defendant, however, chose to default and the court must draw every inference against him. In this regard, the court in *Flores* noted that "[o]n a national scale, cable piracy results in revenue losses of approximately $5.1 billion, exclusive of pay-per-view service theft." *Flores,* 2001 U.S. Dist. LEXIS 9351 at *11. Given the magnitude of this problem, deterrence of future violations is of great importance, and damage awards should reflect that goal.

Attorneys' Fees:

The court also recommends that the plaintiff be awarded $1,185.75 in attorneys' fees, pursuant to §605(e)(3)(B)(iii). The plaintiff has supported its request for $1,317.50 in attorney's fees with the requisite documentation showing, for each attorney, the "date, the hours expended, and the nature of the work done." *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir. 1983). Practical experience teaches, however, that some overlap of efforts often occurs in litigation such as this, and some greater economy of time might have been used. To reflect this, the court will, exercising its discretion, reduce the number of overall hours by 10%. *See Carey,* 711 F.2d at 1146 (noting that courts have "endorsed percentage cuts as a practical means of trimming fat from a fee application"); *M.L. v. Board of Ed.*, 2003 U.S. Dist. LEXIS 3473, at *13-14 (reducing total award by ten percent); *Envirosource, Inc. v. Horsehead Resource Dev. Co.,* 981 F. Supp. 876, 884 (S.D.N.Y. 1998) (reducing total number of hours by 25%); *see also Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994) (district court not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items") (*per curiam*). Applying the 10% reduction in hours

spent, the court recommends an award of attorneys' fees in the amount of $1185.75.

Costs are reimbursable "as long as they were incidental and necessary to the representation" of the client. *Securities and Exch. Comm'n v. Goren,* 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (internal quotation omitted). The plaintiff seeks to be reimbursed for the costs associated with filing and serving the summons and complaint. Accordingly, the court recommends an award of costs in the amount of $224.00, for a total fees and costs award of $1,409.75.

The plaintiff is directed to serve a copy of this Report and Recommendation on Mr. Cella by certified mail, and to file proof of such service with the court.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of the service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F. 3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       January 30, 2006

                                       _____/s/_____
                                       ARLENE R. LINDSAY
                                       United States Magistrate Judge